# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-02011-SCT

*ROBERT CARSON a/k/a BAY BAY*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/07/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     A jury convicted Robert Carson of capital murder, being a felon in possession of a firearm, and conspiracy to commit armed robbery, all of which arose from the shooting death of Juan Ortiz during an armed robbery in Madison County on April 30, 2012. Carson received a life sentence without the possibility of parole for his capital-murder conviction, a ten-year sentence for being a felon in possession of a firearm, and a five-year sentence for conspiracy to commit armed robbery. On appeal, Carson argues that his trial counsel was

ineffective for failing to request an instruction regarding the unreliability of accomplice testimony and that there is a "reasonable probability" that there would have been a different outcome at trial if counsel had requested the instruction. He also argues that he was entitled to receive his proposed instruction D-6. We find his arguments to be without merit and affirm.

## FACTS AND PROCEEDINGS BELOW[1]

¶2.    On April 30, 2012, Robert Carson, Bobby Allen, and Edward Earl Clay spent the day together at the apartment of Crystal Brent, Carson's cousin, barbecuing on the grill, smoking cigarettes and marijuana, and consuming codeine and beer. Between seven and eight o'clock that evening the men ran out of money for cigarettes and beer, so they decided to go out and "hit a lick," meaning rob someone at gunpoint. The men got into a grey rental car, drove to Ridgeland, and started driving around apartment complexes looking for someone to rob. Both Carson and Clay were carrying guns. Carson's gun was a black semiautomatic handgun. Clay's was a .38 special revolver. Allen was the getaway driver.

¶3.    Around 11 o'clock that evening, the three men drove into the Ridgeland Ranch apartment complex. They backed the car into a parking spot, smoked marijuana, and waited for another car to drive up. After waiting for ten or fifteen minutes, the men saw Jose Ortiz drive into the apartment complex. Ortiz was the manager of Margarita's Mexican restaurant on County Line Road and was returning home after the dinner shift. Ortiz was carrying almost $600 in cash.

---

[1] The facts are according to the trial testimony of Edward Earl Clay, Carson's alleged accomplice.

2

¶4.    Carson got out of the car, carrying his semiautomatic handgun. After Carson had been out of the car for two or three minutes, Clay got out of the car to help Carson with the robbery. Carson approached Ortiz in the parking lot. Clay stood about five feet away. Carson pointed his gun at Ortiz, and Ortiz took out his wallet and turned it inside out so that its contents fell to the ground.  After Ortiz had emptied his wallet, Carson shot Ortiz in the face. Carson collected the money from the ground and then searched Ortiz's pockets for more money.  Carson and Clay ran back to the car.  When they got back to Jackson, the men divvied up the stolen money and used it to buy beer and cigarettes.  Each man received approximately $120 from the crime.

¶5.    After the shot was fired, Jose Hernandez, a resident of the Ridgeland Ranch complex and one of Ortiz's neighbors, saw an African-American man wearing a blue ACE shirt running between the buildings.  Hernandez called the Ridgeland Police Department, and police officers arrived at the apartment complex five minutes later.  The Ridgeland police officers discovered Ortiz's dead body lying in the back seat of his car and $177.28 in mixed bills and change in Ortiz's front pocket.

¶6.    Based on an anonymous tip, the Ridgeland Police Department identified Carson as a suspect in Ortiz's murder.  Carson was arrested on May 3, 2012, and was charged with capital murder and armed robbery.  After Carson's arrest, the Ridgeland Police Department identified both Clay and Allen as suspects.  Clay and Allen turned themselves in to police on May 17, 2012.  They gave separate statements to police in which they confessed to the armed robbery and said that Carson had shot Ortiz.  On July 26, 2012, a Madison County grand jury

3

returned an indictment against Carson, charging him with capital murder, being a felon in possession of a firearm, and conspiring with Clay and Allen to commit armed robbery. The Ridgeland Police Department was unable to find the gun that was used to shoot Ortiz.

¶7. Carson's trial commenced on March 4, 2014. Hernandez testified that, although he had heard a shot fired, he did not see anyone shoot Ortiz. He also testified that he had seen a tall, thin African-American man wearing a blue ACE shirt running between the apartment complex's buildings.

¶8. Officer Rodney Hale testified that he was the first officer from the police department to arrive at the scene. Hale described finding Ortiz's body in the back of his car. He said that Ortiz was holding his wallet, which was turned inside out. Adrian Ready, a detective with the Ridgeland Police Department, also testified on the State's behalf. Detective Ready testified, without objection, that the police department had procured surveillance footage of Ortiz purchasing beer at a local convenience store at 11:08 p.m. and that Hernandez's call to the Ridgeland Police Department was made at 11:20 p.m. Thus, Ready deduced that the crime had occurred during the twelve minutes between 11:08 and 11:20 p.m. Ready averred (without objection) that the surveillance footage from the gas station did not show that Ortiz was being followed by anyone. The police department tried to dust Ortiz's car for fingerprints, but officers were unable to obtain any. According to Ready, the police department was unable to find either the assailant's gun or a spent shell casing.

¶9. Clay testified for the State. He said that he had pleaded guilty to armed robbery and that, although he had not been sentenced yet, he expected to be sentenced to twenty-five

4

years of incarceration to be served day-for-day. Clay said that it was his idea for the men to go out and "hit a lick" for money with which to buy beer and cigarettes. Clay testified that the men drove to the Ridgeland Ranch apartment complex for the purpose of committing an armed robbery and that Carson brought a semiautomatic handgun. According to Clay, after the men saw Ortiz drive by, Carson got out of the car to find Ortiz. Clay averred that he got out of the car two or three minutes later to help Carson commit the robbery. Clay said that he was standing about five feet away from Carson when Carson pointed his gun at the victim. Ortiz then flipped his wallet inside out. Clay testified that, after Ortiz had emptied his wallet, Carson shot Ortiz in the face and searched his pockets for money. Clay said that, after he and Carson had returned to the car to meet Allen, he seen Carson's gun and noticed that a shell casing was lodged in the gun's chamber.

¶10. On cross-examination, Clay admitted that, at the time of the crime, he was high on marijuana and codeine. He said that he had been convicted of burglary of a dwelling, burglary of an automobile, and automobile theft. He averred that he had pleaded guilty to armed robbery but that his plea deal was not contingent upon his testimony against Carson. He also said that, after he had taken the plea deal, he mailed the following to police:

> I lied about the confession I made to [the] investigator about the crime that took place on April 30, 2012, armed robbery and capital murder due to . . . [the] severity of the charges. All I was thinking about was going home 'cause I was out on [early release supervision]. I was afraid that . . . they was gone [sic] violate me. I didn't have any knowledge about this case. I'm sorry All I wanted to do was go home.

Clay testified that he wrote the recantation because he thought that all of the charges would be dropped because the prosecution did not have any evidence.

5

¶11. The State called Dr. Amy Gruszecki, a forensic pathologist, who performed the autopsy on Ortiz. She testified that Ortiz had died as a result of blood loss from a gunshot wound to his face.

¶12. Finally, the State called Aretha Brent, Carson's cousin, to testify. She said that Carson had told her, "well, if I killed [Ortiz], I just did it, you know. I'm just tired of people saying I did it." Carson admitted to Brent that he had robbed Ortiz, but he did not tell her that he had shot or killed him. Brent testified that the Ridgeland Police Department had offered to dismiss her outstanding warrants for failure to pay traffic tickets in exchange for her testimony.

¶13. Crystal Brent was called as a witness in Carson's defense. Brent said that she had seen Carson at the barbecue held at her apartment on April 30, 2012, that she had seen him leave, and that she did not see him return.

¶14. Bobby Allen did not testify at Carson's trial because he had invoked his Fifth Amendment right to remain silent.

¶15. The jury returned guilty verdicts against Carson on all three charges. Carson received a life sentence without the possibility of parole for his capital-murder conviction, a ten-year sentence for being a felon in possession of a firearm, and a five-year sentence for conspiracy to commit armed robbery. The trial court ordered that Carson's sentences for felon in possession of a firearm and conspiracy to commit armed robbery would run consecutively to each other. The trial court determined that both sentences should run concurrently with Carson's life sentence for capital murder.

¶16. On July 29, 2015, the Court received an affidavit by mail, ostensibly from Bobby Allen. In the affidavit, executed on July 27, 2015, Allen said that he had lied to investigators about Carson's involvement in the crime. He swore that he and Clay had conspired to blame the crimes on Carson because they hated him. He said that Carson was not with Allen and Clay when the crime was committed and that he had decided to come forward with the new, contradictory information because he did not want to see an innocent man punished with life imprisonment.

## DISCUSSION

I. **Whether Carson's trial counsel was ineffective for failing to request a cautionary instruction about the reliability of accomplice testimony.**

¶17. First, Carson argues that his trial counsel was ineffective because she failed to request an instruction cautioning the jury about the unreliability of accomplice testimony. A defendant in a criminal case is entitled, under both the United States and Mississippi Constitutions, to effective assistance of counsel. U.S. Const. amends. VI, XIV; Miss. Const. art. 3, § 26; *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In *Strickland v. Washington*, the United States Supreme Court articulated the test for considering a constitutional claim of ineffective assistance of counsel. First, the court must determine whether the defendant received reasonably effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. Second, if it is determined that the defendant did not receive reasonably effective assistance of counsel, the reviewing court must determine whether the insufficiency had a "reasonable probability" of affecting the outcome of the case. *Id*. at 695. A

7

"reasonable probability" means that the confidence of the court in the outcome is undermined, not that it is certain that the verdict would have been different. *Id*.

¶18. Generally, ineffective-assistance claims are raised during post-conviction proceedings. *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). However, a claim of ineffectiveness may be raised on direct appeal "if such issues are based on facts fully apparent from the record." M.R.A.P. 22(b).

¶19. Initially, we must determine whether Carson's trial counsel was ineffective. The "[c]lear law in the State of Mississippi is that the jury is to regard the testimony of co-conspirators with great caution and suspicion." *Derden v. State*, 522 So. 2d 752, 754 (Miss. 1988) (citations omitted). When determining whether a defendant is entitled to a cautionary instruction to this effect, the trial judge considers: (1) whether the witness was in fact an accomplice and (2) whether the witness's testimony was corroborated. *Brown v. State*, 890 So. 2d 901, 910 (Miss. 2004) (citing *Burke v. State*, 576 So. 2d 1239, 1242 (Miss. 1991)). Although the decision to grant a cautionary instruction about the testimony of an accomplice ordinarily is within the trial judge's discretion, this instruction is mandatory when the accomplice's testimony is the sole basis for the conviction and when the defendant's guilt is otherwise not clearly proven. *Wheeler v. State*, 560 So. 2d 171, 173 (Miss. 1990) (citations omitted).

¶20. We hold that Carson's counsel provided constitutionally deficient performance by failing to request an accomplice-testimony instruction. The State used Edward Earl Clay's

testimony to identify Carson as the shooter, and there can be no strategic explanation for forgoing a jury instruction that would have discredited Clay's testimony.

¶21. However, we do not hold that Carson has shown that his counsel's deficient performance prejudiced his defense. Under *Strickland*, to establish constitutionally ineffective assistance, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 69. Here, the jury heard testimony from a nonaccomplice witness–Aretha Brent–that Carson had admitted his involvement in the robbery. Further, the jury heard about Clay's involvement in the crime. He testified that he had pleaded guilty to armed robbery and that he had not yet been sentenced. Certainly, the jury could deduce that Clay had an incentive to lie. We do not conclude that a reasonable probability exists that the result would have been different with an accomplice-testimony instruction.

## II. Whether the trial court erred by refusing to give proposed jury instructions D-6 and D-7 to the jury.

¶22. Carson argues that the trial court erred by refusing to give his proposed instructions D-6 and D-7 to the jury. This Court reviews a trial court's decision to refuse requested jury instructions for an abuse of discretion. *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010). "The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context." *Young v. State*. 891 So. 2d 813, 819 (Miss. 2005) (citing *Howell v. State*, 860 So. 2d 704, 761 (Miss. 2003)). When read together, if the jury instructions convey the law of the case and create no injustice, there is no reversible error. *Newell*, 49 So. 3d at

9

73 (citing **Rubenstein v. State**, 941 So. 2d 735, 784-85 (Miss. 2006)). We have held that "[a] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." **Hearn v. State**, 3 So. 3d 722, 738 (Miss. 2008) (citing **Chandler v. State**, 946 So. 2d 355, 360 (Miss. 2006)).

¶23. Carson argues that the trial court erred in not granting his proposed instruction D-6:

> The law presumes every person charged with the commission of a crime to be innocent. The presumption places upon the State the burden of proving the defendant guilty of every material element of the crime with which the defendant is charged. Before you can return a verdict of guilty the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty. The presumption of innocence attends the defendant through the trial and prevails at the close of trial unless overcome by evidence that satisfies the jury of the defendant's guilty [sic] beyond a reasonable doubt. The defendant is not required to prove his innocence.

Instead, the trial court gave jury instruction C-2:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove that the Defendant is guilty beyond a reasonable doubt. The Defendant is not required to prove his innocence.

Read with instruction C-2, instruction D-6 added only that "[t]he presumption of innocence attends the defendant through the trial and prevails at the close of trial unless overcome by evidence that satisfies the jury of the defendant's guilty [sic] beyond a reasonable doubt." By instructing the jury that the "presumption places upon the State of Mississippi the burden of proving the Defendant guilty" and that "the State must prove that the Defendant is guilty

10

beyond a reasonable doubt," the trial court provided the jury every component of Carson's instruction, but in different language.

¶24.    In *Harris v. State*, we found that the jury instructions "adequately informed the jury on the burden of proof." *Harris v. State*, 861 So. 2d 1003, 1015-16 (Miss. 2003). We identified the key requirements for instructing the jury on the State's burden: "that the burden of proof is on the State, and 'The Defendant is not required to prove anything.'" *Id*. at 1016. Here, C-2 informed the jury that the State bore the burden of proof, that it must prove each element of the crime beyond a reasonable doubt, and that Carson enjoyed a presumption of innocence.

¶25.    Carson argues that the trial court erred in denying Instruction D-7. The proposed-but-denied Instruction D-7 stated in pertinent part:

> The Court instructs the jury that under the law no juror has the right to convict, nor should convict, Robert Carson upon mere suspicion regardless of how strong the suspicion may be or simply because there is, or may be, a reason to suspect the defendant is guilty. The Court now instructs you, ladies and gentlemen of the Jury, that suspicion, no matter how strong or convincing, never rises to the dignity of evidence under the law, and before you or your oath as Jurors can lawfully convict Robert Carson you must be convinced upon the evidence and the evidence alone, that Robert Carson is guilty beyond a reasonable doubt.

According to Carson, the trial court erred in denying this instruction because the information is not found in the granted jury instructions. However, Instruction C-1, provided to the jury instead of D-7, read in pertinent part:

> . . . It is your function to determine the facts in this case and to consider and weigh the evidence for that purpose. You are to apply the law to the facts, and in this way decide the case. You are also permitted to draw such reasonable inferences from the evidence as seems justified in the light of your own

11

experience. It is your prerogative to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified. You should not be influenced by bias, sympathy or prejudice. Your verdict should be based on the evidence and not upon speculation, guesswork or conjecture. . . .

The instruction further instructed the jury that the trial court's rulings on the admissibility of evidence should not be speculated upon as the Court favoring one party or the other, as those decisions were "controlled and governed by rules of law." Instruction C-1 does not discuss "suspicion" in the same length as Instruction D-7, but Instruction C-1 provides the same effect: that the jury should consider only the admitted evidence and any "reasonable inferences" adduced therefrom, and that the jurors should not allow "bias, sympathy or prejudice . . . speculation, guesswork or conjecture" to decide the case in place of the evidence.

¶26. In *Moise v. State*, 159 So. 3d 1205, 1208-09 (¶¶ 7-14) (Miss. Ct. App. 2015), the Court of Appeals considered a nearly identical refused instruction. Moise's proposed instruction, like Carson's, instructed the jury that "under the law you do not have the right to convict Richard Moise upon mere suspicion, regardless of how strong that suspicion might be." *Id.* at 1209 (¶ 11). The trial court denied that instruction because it believed the information was covered in the other instructions, in particular, one that read that the jury's verdict "should be based on the evidence[ ] and the law and not upon speculation, guesswork[,] or conjecture." *Id.* at (¶ 13). The Court of Appeals held that the trial judge had not erred. *Id.* at (¶ 14). "[T]he information from the proposed Instruction . . . was covered

12

by other instructions, and it is not error for a trial court to 'refuse . . . jury instructions that . . . are covered fairly elsewhere in the instructions.'" *Id.* (citing ***Dora v. State***, 20 So. 3d 46, 50 (¶ 16) (Miss. Ct. App. 2009)).

¶27.   When read as a whole, Instructions C-1 and C-2 properly instructed the jury on the presumption of innocence and the necessity of ignoring unfounded suspicion and speculation during deliberations.  We hold that the instructions fairly announced the law, and that the circuit judge did not err by denying proposed instructions D-6 and D-7.

### III.   Whether the Court should consider Bobby Allen's affidavit.

¶28.   On July 29, 2015, the Court received a purported affidavit from Bobby Allen, one of Carson's alleged coconspirators.  In this document, which bears the date July 27, 2015, Allen says that he lied to investigators about Carson's involvement in the crimes against Ortiz and that he, Allen, is the man who robbed, shot, and killed Ortiz.

¶29.   Rule 22(b) of the Mississippi Rules of Appellate Procedure provides: "Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record."  (Emphasis added.)  In ***Havard v. State***, 928 So. 2d 771, 786 (Miss. 2006), the Court declined to consider affidavits that were not part of the trial record but were submitted in support of one of the defendant's claims. The ***Havard*** Court held that it was "not about to embark upon a journey of a carte blanche consideration of outside-the-record documents . . . to decide issues on direct appeal" —especially when the documents had not been subjected to the same evidentiary standards as evidence submitted at trial.  ***Id***.

13

¶30. Given that Allen's purported affidavit is not properly before this Court because it is not in the designated record, we will not consider it in Carson's direct appeal.

**IV. Whether Carson's multicount indictment was facially defective.**

¶31. On December 14, 2015, Carson filed pro se a Motion to Supplement Appeal Brief. Carson stated that an additional issue exists that the Court needs to consider. Carson attached his proposed supplemental brief to the Motion as an exhibit.

¶32. Mississippi Rule of Appellate Procedure 28(b) allows an appellant in a criminal appeal to file a pro se supplemental brief, which "may address issues not raised by counsel, but such issues must be based on the record." The pro se brief otherwise must follow Court requirements for content and form. Carson's brief argues that his indictment, which forms part of the record before us, is facially defective. The State failed to respond to Carson's Motion to Supplement Appeal Brief. We grant his motion and consider the merits of his argument.

¶33. Carson states that Count I of his multicount indictment fails to identify the victim of the underlying crime, and Count III fails to identify the victim of the conspiracy. "[T]his Court has squarely held that challenges to the substantive sufficiency of an indictment are not waivable. Thus, they may be raised at anytime, including on appeal." *State v. Berryhill*, 703 So. 2d 250, 254 (¶ 16) (Miss. 1997) (holding that a granted motion to quash, filed after the empanelment of the jury, was not untimely). "For example, a challenge to an indictment for failure to charge the essential elements of a criminal offense affects a fundamental right, and may not be waived." *Ross v. State*, 954 So. 2d 968, 1015 (¶ 126) (Miss. 2007) (citing

14

*Jefferson v. State*, 556 So. 2d 1016, 1019 (Miss. 1989) (noting the essential-elements exception to the general rule that guilty pleas waive defects in the indictment)). Carson argues that the identity of the victim is an essential element of the crimes charged, so the omissions in his indictment render it fatally flawed, and he requests that the Court vacate his convictions arising out of Counts I and III.

¶34. The sufficiency of an indictment is a question of law, and therefore is reviewed de novo. *Berry v. State*, 996 So. 2d 782, 785-86 (¶ 8) (Miss. 2007) (quoting *Quang Thanh Tran v. State*, 962 So. 2d 1237, 1240 (Miss. 2007)). "So long as a fair reading of the indictment, taken as a whole, clearly describes the nature and cause of the charge against the accused, the indictment is legally sufficient." *Farris v. State*, 764 So. 2d 411, 421 (¶28) (Miss. 2000) (citing *Harrison v. State*, 722 So. 2d 681, 687 (Miss. 1998)). Carson correctly cites *Burks v. State*, 770 So. 2d 960, 963 (¶12) (Miss. 2000), for the proposition that where the identity of the victim is an essential element of the crime charged, the indictment indeed must state the name. A failure to do so "or a material variance between statement and proof is fatal, but an immaterial variance is not." *Id.* (quoting *Hughes v. State*, 207 Miss. 594, 603, 42 So. 2d 805, 807 (1949)).

¶35. Count I of Carson's indictment charged him with the murder of Ortiz with the underlying felony of robbery:

> Robert Carson, . . . did, without authority of law and with or without any design to effect death, kill and murder Jose Gurrola Ortiz, a human being, and while [Carson] was then and there engaged in the commission of the crime of a robbery, in violation of Miss. Code Ann. § 97-3-73 (1972, as amended), and in violation of Miss. Code Ann. § 97-3-19(2)(e) (1972, as amended)[.]

15

Arguing that this count is defective, Carson cites *Coffield v. State*, 749 So. 2d 215, 217 (Miss. Ct. App. 1999), claiming that the Court of Appeals therein "established that the identity of the victim is an essential element of the crime of robbery." However, Coffield had been convicted of the deliberate-design murder of his wife and appealed, claiming that, because the indictment failed to specify that his wife had been a human being, it was fatally defective. *Id.* at 217 (¶ 5). The State had not charged Coffield with robbery; the only mention of it lay within the discussion of Mississippi statutes which define crimes against other persons. *Id.* at 217 (¶ 7). The Court quoted the statutes for robbery and assault to show that those statutes "omit any specific requirement that the victim be a human being," and concluded that the State is not required to charge or present any proof that the victim was in fact a human being, other than giving the "specific identity of the victim[.]" *Id.* Accordingly, *Coffield* has no bearing on the issue.

¶36. In *Batiste v. State*, 121 So. 3d 808 (Miss. 2013), we considered an analogous situation. Appealing his conviction for murder with the underlying felony of robbery, Batiste argued that his indictment was defective because it failed to "recite the item or items stolen." *Id.* at 835 (¶ 41). According to Batiste, this omission prejudiced his defense because "he was forced to guess which of the objects the State would claim were the subject of the robbery and part of the *res gestae* of the crime." *Id.* at 835-36 (¶ 41). We rejected his argument. A criminal defendant has a constitutional right "to be informed of the nature and cause of the accusation[]" against him. U.S. Const. amend. IV; *see also* Miss. Const. art 3, § 26 (1890). An indictment which tracks the language of the criminal statute is sufficient to place the

defendant on notice of the charge against him. *Batiste*, 121 So. 3d at 836 (¶43) (citing *Stevens v. State*, 808 So. 2d 908, 912 (Miss. 2002)). Regarding capital-murder cases, for which both Batiste and Carson were charged, "unless the underlying felony is burglary, 'the underlying felony that elevates the crime to capital murder must be identified in the indictment along with the section and subsection of the statute under which the defendant is being charged.' . . . No further detail is required." *Id.* (quoting *Goff v. State*, 14 So. 3d 625, 665 (Miss. 2009); Miss. Code Ann. § 99-17-20). We concluded in Batiste that requiring the State to list the items stolen within a capital-murder indictment with the underlying felony of robbery would, in fact, "require even more detail than a robbery indictment" alone. *Batiste*, 121 So. 3d at 836 (¶43); *see also* *Randall v. State*, 148 So. 3d 686, 688-89 (Miss. Ct. App. 2014) (holding that a capital-murder indictment with the underlying felony of robbery did not require the State to list the elements of robbery where robbery was stated in the indictment and the sections of the Mississippi Code properly cited therein). As with *Batiste*, Carson's indictment provided that the felony underlying his capital-murder charge was robbery and stated the Code section defining the crimes of robbery and of capital murder.

¶37. However, Carson and the dissent argue that *Rowland v. State*, 98 So. 3d 1032 (Miss. 2012), "established that the identity of the victim of an underlying armed robbery is an element of capital murder that must be stated in the capital murder indictment." In *Rowland*, the Court considered a post-conviction relief case in which three masked men carrying firearms, one of whom was Rowland, entered a country club at which eight men were playing

17

poker and robbed the players, shooting and killing two of the victims in the process. *Id.* at 1033 (¶ 2). Rowland was charged and pleaded guilty to four counts: (1) capital murder of James Campbell while committing the crime of armed robbery "of Pat Bolton and others," (2) capital murder of Paul Hughes while committing the crime of armed robbery "of O.B. Singleton and others," "(3) armed robbery of Pat Bolton, and (4) armed robbery of O.B. Singleton." *Id.* at 1033-34 (¶ 3). Rowland argued that the four-count indictment violated his constitutional right against double jeopardy, and the Court agreed. The Court held that the State had failed to place Rowland on sufficient notice of the charges against him: "Rowland could not have been convicted on an indictment of capital-murder based on the 'armed robbery of . . . others,'" but only on the "armed robberies of the individuals named in the indictments: O.B. Singleton and Pat Bolton." *Id.* at 1039 (¶ 12). Further, by convicting Rowland of two counts of capital murder with the underlying offense of armed robbery of Bolton and Singleton *and* two counts of armed robbery of Bolton and Singleton, the State improperly had placed Rowland in double jeopardy. *Id.* (¶ 13).

¶38. Carson is correct that the *Rowland* Court wrote as follows:

> [a] capital-murder indictment that fails to identify the victim of the underlying crime does not contain sufficient facts to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy in the event that he is separately punished or later prosecuted for the underlying felony; in other words, the identity of the victim of the underlying felony is an element of the offense of capital murder that must be stated in the capital murder indictment.

*Id.* (¶ 12). The *Rowland* Court wholly failed to cite authority for the above-quoted indentity-as-element proposition which, for good measure, contradicts the principle of sufficiency of

18

a capital-murder indictment found in *Batiste* and *Goff*, above. Because we now realize that the above-quoted language contradicts prior caselaw such as *Goff* and encroaches upon the legislative prerogative to establish the elements of crimes, we today overrule *Rowland* to the extent that it may be read to hold the identity of the victim of an underlying felony is an element of the offense of capital murder.

¶39. Because the *Rowland* Court made the slight – yet significant – misstep of looking at the "charges as indicted" rather than the elements of the crimes charged, to reach the conclusion that Rowland's double-jeopardy rights had been violated, the Court forced itself to consider the name of the victim as an element of the crime. *Id*. at 1039 (¶ 13). The Court in *Rowland* recited what it considered to be the elements of the capital-murder charge directly from the indictment, which read as to one count, "the killing of Paul Hughes while engaged in the commission of armed robbery of O.B. Singleton and others," and as to the other count, "the killing of James Campbell while engaged in the commission of armed robbery of Pat Bolton and others." *Rowland*, 98 So. 3d at 1038 (¶¶ 11-12). In short, the *Rowland* Court inadvertently elevated underlying facts – the identities of the victims – which are *not* to be part of the double-jeopardy analysis to the status of elements of the crime. *Culp v. State*, 933 So. 2d at 281 (¶ 58) ("The *Blockburger* test does not look to the facts adduced at trial but rather focuses on the elements of the offense charged.").

¶40. As applied to the defective-indictment claim at issue today, *Rowland* not only contradicts the above-mentioned holdings of *Batiste* and *Goff* that require only that the underlying felony be named and the corresponding code section be identified, but the Court

19

has invaded the province of the Legislature and created a new element of capital murder. *Sinclair v. State*, 161 Miss. 142, 132 So. 581, 592 (1931) ("The Legislature has full power to declare and define crime. . . ."). In today overruling the part of *Rowland* that purported to make the identity of the victim of the underlying felony of armed robbery an element of the crime of capital murder, we accomplish two things. We resolve the tension that *Rowland* created with the line of cases including *Batiste* and we step back from an unconstitutional encroachment on the power of the Legislature to define the crime of capital murder.

¶41.    As for Carson's argument that *Rowland* mandates reversal due to the potential of a double-jeopardy violation, *Rowland* easily may be distinguished. The issue in *Rowland* was whether the State had violated Rowland's right to be free of double jeopardy by convicting him both of capital murder with the underlying offense of armed robbery *and* of committing the armed robbery that served as the predicate felony for the capital-murder conviction. *Rowland*, 98 So. 3d at 1033 (¶ 1). In reaching its holding, that such multiple convictions did violate Rowland's protection against double jeopardy, the *Rowland* Court created a new element of the crime of capital murder with the predicate felony of armed robbery – the identity of the victim or victims of the armed robbery. In any event, Carson places only one conviction at issue in the case *sub judice*. The State is not in fact charging Carson with a count of armed robbery in addition to that count which undergirds the capital-murder charge. Unlike Carson's case, *Rowland* actually alleged a double-jeopardy violation.

¶42.    Carson does not claim a present-day double-jeopardy violation, but he will be well-enabled by the wording of the indictment to plead double jeopardy should the State try to

20

convict him of the armed robbery of Ortiz in the future. Count I of the indictment identifies Ortiz as the victim of the capital murder. Nowhere has a cogent argument been advanced that, should the State return an indictment against him for the armed robbery of Ortiz, thereby putting him in the same position as the defendant in **Rowland**, he could not cite the language of his indictment to plead double jeopardy. Unlike **Rowland**, no amorphous "and others" language is to be found in Carson's indictment.

¶43. Carson does not so substantively attack Count III of his indictment, which charged him with conspiracy:

> And, based upon a series of acts connected together and constituting parts of a common scheme and plan, [Carson], . . . did conspire with Edward Clay and Bobby Allen to willfully, feloniously, and knowingly commit the crime of Armed Robbery, in violation of Miss. Code Ann. § 97-3-79[] (1972, as amended), thereby violating Miss. Code Ann. § 97-1-1 (1972, as amended).

However, he does argue that the failure to name the victim of the crime of conspiracy renders it facially defective because he was not "given sufficient facts to fairly inform him of the charges against which he had to defend and to enable him to plead double jeopardy in the event that Carson is later prosecuted for the crimes." Carson fails to cite authority for this argument. However, **Sanderson v. State**, 883 So. 2d 558, 560-61 (Miss 2004), is directly on point.

¶44. Like Carson, Sanderson challenged his conspiracy conviction on the ground that his indictment failed to name the victim of the conspiracy. **Id.** at 560 (¶ 8). The Court of Appeals agreed with Sanderson, but, on writ of certioriari, we reversed its decision because the name of the victim of a conspiracy is not an element of the crime of conspiracy. **Id.** As

21

of today, the definition of the crime of conspiracy has not changed to require the name of a victim. Miss. Code Ann. § 97-1-1 (Rev. 2014).

¶45. Although in his dissent Justice Kitchens discusses whether the indictment provided sufficient notice, Carson does not raise the issue. Accordingly, we decline to address it. Miss. R. App. P. 28(a)(7).

## CONCLUSION

¶46. We hold that, while Carson's attorney should have requested an accomplice-testimony instruction, Carson has failed to demonstrate a reasonable probability that the result of the proceeding would have been different had the instruction been granted. The court did not err in denying Carson's proposed D-6 instruction. We affirm Carson's conviction and sentence.

¶47. **COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION OR ANY OTHER FORM OF EARLY RELEASE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF CONSPIRACY TO COMMIT ARMED ROBBERY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCES IN COUNTS II AND III SHALL RUN CONSECUTIVELY. THE SENTENCES IN COUNTS II AND III SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I. APPELLANT SHALL PAY COURT COSTS, FEES AND ASSESSMENTS IN THE AMOUNT OF $995.50; HOWEVER, COURT COSTS, FEES AND ASSESSMENTS ARE HEREBY WAIVED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, MAXWELL AND BEAM, JJ., CONCUR. DICKINSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**DICKINSON, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

22

¶48. I write separately to advocate abolition of accomplice-testimony instructions because they invade the jury's exclusive province to weigh and determine the credibility of the witnesses.

¶49. Carson's ineffective-assistance-of-counsel claim centers on his counsel's failure to request an instruction informing the jury that it should "regard the testimony of co-conspirators with great caution and suspicion."[2] In my view, such accomplice-testimony instructions are inappropriate.

¶50. In *Drummer v. State*, I joined Justice Kitchens's view that we should abolish flight instructions because they inform jurors that they may infer guilt from the fact that a defendant flees the scene of the crime.[3] While I do not question that a defendant's flight may be some proof of guilt, a jury instruction that elevates "some proof of guilt" to an inference of guilt, impermissibly and unnecessarily injects the trial judge into the jury's consideration of the evidence. And by instructing the jury that it may infer guilt, the judge endorses that particular inference over all others that reasonably may be drawn from the evidence. Flight instructions have no articulable purpose, other than to help the State prevail.

¶51. Accomplice-testimony instructions suffer from the same flaws. They directly contradict the well-settled principle that only the factfinder may judge the credibility of a

---

[2] *Derden v. State*, 522 So. 2d 752, 754 (Miss. 1988) (citing *Winters v. State*, 449 So. 2d 766, 771 (Miss. 1984); *Simpson v. State*, 366 So. 2d 1085 (Miss. 1979); *Thomas v. State*, 340 So. 2d 1 (Miss. 1976)).

[3] *Drummer v. State*, 167 So. 3d 1180, 1196–99 (Miss. 2015) (Kitchens, J., concurring in part I and dissenting from part II).

witness.[4]  When the judge instructs the jury that it should view a coconspirator's testimony with suspicion, the judge, with the Court's imprimatur, prejudges the credibility of that witness, abrogating the jurors' right to judge for themselves.  In the same way that a flight instruction places the judge's approval on a particular inference, the accomplice-testimony instruction places the judge's scepticism on a particular witness's testimony.

¶52.    And what juror needs to be told that a coconspirator has a significant incentive to lie?  Certainly, any person capable of serving on a jury recognizes this fact without an instruction, especially where, as here, the coconspirator testified that he pleaded guilty and had not yet been sentenced at the time of the defendant's trial.  So, for these reasons, I would do away with accomplice-testimony instructions just as I would flight instructions.  That said, I do not believe we could apply that change to Carson.

¶53.    In *Rogers v. Tennessee*, the United States Supreme Court held that a state court's decision to abrogate a common-law doctrine may violate a criminal defendant's due process rights when the change works to the defendant's disadvantage and the court applies that change retroactively.[5]  "[A] judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only

---

[4] *Carr v. State*, 655 So. 2d 824, 837 (Miss. 1995) (quoting *Sudduth v. State*, 562 So. 2d 67, 70 (Miss. 1990)).

[5] *Rogers v. Tennessee*, 532 U.S. 451, 461–62, 121 S. Ct. 1693, 1700, 149 L. Ed. 2d 697 (2001).

where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'"[6]

¶54.    Under this test, retroactive application of a decision to abolish accomplice-testimony instructions would violate due process. Accomplice-testimony instructions were available at the time of Carson's trial, and this Court has given no indication that it might change that rule. The change would be both "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'"[7] So I agree with the majority's analysis of Carson's ineffective-assistance-of-counsel claim without regard to my view that these instructions should be abolished.

**KITCHENS, JUSTICE, DISSENTING:**

¶55.    I respectfully dissent. An indictment that fails to provide sufficient notice of the specific crime charged violates the defendant's constitutional due process rights. *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948). In *Rowland v. State*, 98 So. 3d 1032 (Miss. 2012), this Court held that an indictment for capital murder that omits the name of the victim of the underlying crime (robbery in *Rowland*) "does not contain sufficient facts to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy" in the event of a later prosecution for the underlying crime. *Id.* at 1039. In stark contravention of *Rowland*, Carson's capital murder indictment failed to name the victim of the underlying crime of robbery. Because the indictment was insufficient

---

[6] *Id.* at 462 (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964)).

[7] *Rogers*, 532 U.S. at 461–62 (quoting *Bouie*, 378 U.S. at 354).

to provide Carson notice of the specific crime charged, his conviction must be reversed and rendered. Yet the majority affirms, overruling **Rowland** in the process. I disagree, because **Rowland** was correctly decided and safeguards the defendant's state and federal constitutional rights to notice of the specific crime charged.

¶56.   I also disagree with the majority's holding that Carson's counsel was not ineffective for failing to request an accomplice-testimony instruction. I would find that this omission constituted deficient performance that prejudiced Carson. Further, I would hold that the trial court erred by denying Carson's proposed instruction D-6; without it, the jury was not instructed on the vital precept that the presumption of innocence attends the defendant throughout the trial.

### I. Carson's Indictment

¶57.   The federal and state constitutions guarantee the right to notice of criminal charges. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. The purpose of an indictment is to provide the defendant reasonable notice of the crime charged to enable him to prepare an adequate defense. **Brawner v. State**, 947 So. 2d 254, 265 (Miss. 2006) (citing **Brown v. State**, 890 So. 2d 901, 918 (Miss. 2004)). "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." **Cole**, 333 U.S. at 201, 68 S. Ct. 514

¶58.   "An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend,

26

and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." ***Gilmer v. State***, 955 So. 2d 829, 836-37 (Miss. 2007). This Court applies *de novo* review to a claim that the indictment was substantively insufficient, and such claim may be raised at any time. ***Id.*** at 836; ***Ross v. State***, 954 So. 2d 968, 1015 (Miss. 2007).

¶59. Carson was indicted in a multicount indictment for capital murder with the underlying felony of robbery, possession of a firearm by a convicted felon, and conspiracy to commit armed robbery. Count I, the capital murder charge, stated:

> ROBERT CARSON, a/k/a "BAY BAY", on or about the 30th day of April, 2012, in the county aforesaid and within the jurisdiction of this Court, did, without authority of law and with or without any design to effect death, kill and murder Jose Gurrola Ortiz, a human being, while the said ROBERT CARSON, a/k/a "BAY BAY" was then and there engaged in the commission of the crime of a[8] robbery, in violation of Miss. Code Ann. § 97-3-73 (1972, as amended), and in violation of Miss. Code Ann. § 97-3-19(2)(e) (1972, as amended)[.]

¶60. A reading of Count I shows that, although the charge identified the homicide victim as Jose Gurrola Ortiz, it did not identify the victim of the robbery in which Carson was engaged when Ortiz was killed. In ***Rowland***, this Court held that:

> A capital-murder indictment that fails to identify the victim of the underlying crime does not contain sufficient facts to fairly inform the defendant of the charge against which he must defend and enable him to plead double jeopardy in the event that he is separately punished or later prosecuted for the underlying felony; in other words, the identity of the victim of the underlying felony is an element of the offense of capital murder that must be stated in the capital-murder indictment.

---

[8] The use of the definite article "a" suggests that the indictment refers to a *specific* robbery, although its victim is not identified.

*Rowland*, 98 So. 3d at 1039. Carson's indictment runs afoul of this rule because it does not identify the victim of the underlying felony. Today the majority overrules *Rowland*, holding that a capital murder indictment need do no more than name the underlying felony.

¶61.     This holding ignores the fact that, to pass constitutional muster, an indictment must do more than list the statutory elements of the charged crime. The United States Supreme Court has held that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" ***Hamling v. United States***, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). But the statutory description of the charged crime "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* Further, the Supreme Court has stated that:

> The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. *For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances*.

***U.S. v. Cruikshank***, 92 U.S. 542, 558, 23 L. Ed. 588 (1875) (emphasis added).

¶62.     The facts of *Rowland* illustrate the importance of the constitutional requirement that the indictment contain essential facts. Rowland was convicted of two counts of armed

robbery and two counts of capital murder while engaged in the commission of the same two robberies. *Id.* at 1033. Rowland's charges arose from an incident in which three masked men armed with shotguns entered the Leflore County Country Club and robbed a gathering of eight poker players. *Id.* During the armed robbery, two of the poker players were slain. *Id.* Rowland was indicted for: (1) the capital murder of James Campbell while "in the commission of the crime of armed robbery of Pat Bolton and others," and the capital murder of Paul Hughes while "in the commission of the crime of armed robbery of O.B. Singleton and others." *Id.* at 1033. He also was indicted in two separate counts for the armed robberies of Pat Bolton and O.B. Singleton. *Id.* at 1033-34. Rowland pled guilty to all four counts, and later he filed a motion for post-conviction relief arguing that he had been twice placed in jeopardy by the convictions of capital murder and armed robbery. *Id.* at 1034.

¶63. On review of Rowland's double jeopardy claim, this Court held that Rowland's right to be free of multiple punishments for the same crime had been violated by his convictions of two counts of capital murder with the underlying felony of armed robbery, and two counts of armed robbery of the same victims. The Court applied the test from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932), which provides that: "if each [criminal] statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." This required the Court to determine whether the armed-robbery convictions "required proof of an additional element that the capital-murder convictions did not." *Rowland*, 98 So. 3d at 1038. The Court found that, if Rowland's capital

murder convictions could have been based on the language "and others" from the indictments, then each count of armed robbery included an element the capital murder convictions did not, namely, "the separate armed robberies of O.B. Singleton and Pat Bolton." *Id.*

¶64. The Court rejected the proposition the capital murder convictions could have rested on the "and others" language. *Id.* at 1039. We held that a capital murder indictment based on the armed robbery of "others" did not identify the robbery victim and did not provide the defendant sufficient notice of the crimes charged and sufficient facts to enable him to plead double jeopardy. *Id.*[9] Quoting **Burks v. State**, 770 So. 2d 960, 963 (Miss. 2000), the Court stated that "[w]e specifically have provided that 'an indictment must state the name of the victim of an offense *where that is an element of the offense*, and a failure to state it, or a material variance between statement and proof is fatal, but an immaterial variance is not.'" *Rowland*, 98 So. 3d at 1039 (emphasis in original). The Court then held that a capital murder indictment must identify the victim of the underlying crime in order "to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy in the event that he is separately punished or later prosecuted for the underlying felony." *Id.* Because Rowland's capital murder convictions could not have been based on his armed robbery of "others," the convictions had to have been based on his armed robbery of the persons named in the indictment, Bolton and Singleton. *Id.* And it was a double jeopardy

---

[9] This holding implicitly recognized that robbery is a crime against persons, not just a property crime. Thus, the person against whom the crime is committed must be identified, similar to the way one would identify the victim of a murder or aggravated assault.

violation for Rowland to have been convicted of the armed robberies of Bolton and Singleton and capital murder with the underlying crimes of armed robbery of Bolton and Singleton. *Id.*

¶65. The Court found that resolving *Rowland*'s double jeopardy issue hinged on whether the name of the victim of the underlying felony is an "element" that must be included in a capital murder indictment. *Id.* at 1038-39. In resolving that question, the Court recognized that *Burks* requires an indictment to include the name of the victim of an offense when that is an essential element of the crime. *Id.* at 1039. Then, the Court held that "[a] capital-murder indictment that fails to identify the victim of the underlying crime does not contain sufficient facts to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy in the event he is separately punished or later prosecuted for the underlying felony . . . ." *Id.* Thus, the Court held that a capital murder indictment must identify the victim of the underlying felony to meet constitutional notice requirements. *Id.*

¶66. The majority overrules *Rowland*, concluding that in *Rowland* we improperly applied the *Blockburger* test and erroneously held that the victim's name is an element of the crime of capital murder. In my view, any flaws in *Rowland*'s analysis are of slight significance and fall far short of warranting the overruling of the Court's carefully reasoned opinion. As explained above, three essential constitutional requirements exist for a valid indictment: the essential elements of the crime, sufficient facts to inform the defendant of the nature and cause of the accusation, and sufficient facts to protect the defendant from a second prosecution for the same crime. *Gilmer*, 955 So. 2d at 836-37. Thus, a constitutionally valid indictment is one that contains both essential elements and essential facts. *Id.* The essential

31

facts describe how the defendant's conduct conformed to the statutory elements of the crime. And, for double jeopardy purposes, the facts alleged must be sufficient to distinguish the charged crime from other crimes. *Goforth v. State*, 70 So. 3d 174, 189 (Miss. 2011). As the United States Supreme Court has recognized, an indictment that provides no more information than the statutory elements of the crime does not contain this vital distinguishing information. *Cruikshank*, 92 U.S. at 558.

¶67. In *Rowland*, this Court held that one necessary distinguishing fact in an indictment for capital murder with the underlying felony of armed robbery is the identity of the armed robbery victim. *Rowland*, 98 So. 3d at 1039. The majority's problem with *Rowland* is that the Court stated that the victim's name was an "element" of the crime. *Id.* While I concede that the term "element" generally is understood as a component of the statutory definition of the crime, *Rowland* clearly held that the victim's name is a fact that is essential to inform the defendant fairly of the crime charged and to enable him to plead double jeopardy in the event of a future prosecution. *Id. Rowland* held that "Rowland could not have been convicted on an indictment of capital-murder based on the 'armed robbery of . . . others'" because the word "others" did not identify the victim or victims of the armed robbery. *Id.*

¶68. And while the majority faults this Court in *Rowland* for examining the indictments to determine whether Rowland twice was placed in jeopardy for the same offense, I would find that the Court was eminently correct in examining the indictments to make this determination. The Fifth Amendment to the United States Constitution prohibits placing a person in jeopardy twice for the same offense. U.S. Const. amend. V. "[A]s expressed in a

32

number of cases, to entitle the accused to plead former jeopardy, the offenses charged in the two prosecutions must be the same in law and in fact." ***Burton v. State***, 226 Miss. 31, 40, 79 So. 2d 242, 246 (1955). ***Blockburger*** examined two potential double jeopardy violations: (1) multiple prosecutions under the same criminal statute, and (2) prosecution under different criminal statutes that the defendant argued really were the "same offense' under the Fifth Amendment. ***Blockburger***, 284 U.S. at 301. ***Blockburger*** held that, in the second scenario, when the defendant claims that his prosecution under two different criminal statutes results in multiple punishment for the same offense, the court must compare the elements of the two statutorily defined crimes; if one crime has an additional element the other does not, the two crimes are not the same offense for double jeopardy purposes. ***Id.*** at 304, 52 S. Ct. 180. It is in this second scenario that the statutory elements of the crime become the focus of the double jeopardy analysis. ***Id.***

¶69.    But in the first scenario, when the defendant claims that his prosecution under a specific statute and his later prosecution under the same statute involved the same offense, the only way to evaluate the claim is to examine the facts alleged in the indictments to determine whether the defendant was, or could be, prosecuted twice for the exact same crime. *See* ***Goforth***, 70 So. 3d at 189 (this Court held that five identically worded counts of sexual battery did not provide sufficient factual detail to protect the defendant's double jeopardy rights); ***Burton***, 226 Miss. at 44-45; 79 So. 2d at 248-49 (examining the factual allegations in the indictments to determine whether the defendant twice had been put in jeopardy for the same offense). In this scenario, the statutory elements will be the same; so any attempt to

33

distinguish the crimes must be undertaken by examining the facts alleged in the indictments, such as the date, time, location, and, as in *Rowland*, the victim's name. Thus, in *Rowland*, to determine whether the defendant unconstitutionally had been punished twice for the same armed robbery, the Court compared Rowland's indictments for armed robbery and for capital murder with the underlying felony of armed robbery. Because the indictments showed that Rowland had been "convicted of the indicted charges of capital-murder for killing during the commission of the armed robberies of O.B. Singleton and Pat Bolton, and then separately for the armed robberies of O.B. Singleton and Pat Bolton," the Court held that he had been placed in double jeopardy. *Rowland*, 98 So. 3d at 1039. While the Court may have been inexact when it labeled the victim's identity an "element," the Court clearly held that the victim's name is an essential fact required to protect the defendant from being twice prosecuted for the same offense. No reason exists to overrule *Rowland*.

¶70.    I find the majority's reliance on *Batiste v. State*, 121 So. 3d 808 (Miss. 2013), and *Goff v. State*, 14 So. 3d 625 (Miss. 2009), to be misplaced. Both cases held that an indictment for capital murder with the underlying felony of robbery need not list the items taken in the robbery. *Batiste*, 121 So. 3d at 836; *Goff*, 14 So. 3d at 665. Neither *Batiste* nor *Goff* addressed a capital murder indictment's failure to identify the victim of the underlying crime, and *Batiste* simply relied on *Goff* without citing the later-decided *Rowland*, indicating that the Court simply failed to consider it.

¶71. Because Carson's indictment did not name the victim of the underlying felony of robbery, his indictment was fatally defective.[10] It did not contain sufficient facts to inform Carson fairly of the nature of the charge and to enable him to plead double jeopardy in the event of a later prosecution for the underlying crime. *Rowland* plainly held that a capital murder indictment must identify the victim of the underlying crime "to fairly inform the defendant of the charge against which he must defend and to enable him to plead double jeopardy in the event that he is separately punished or later prosecuted for the underlying felony." *Rowland*, 98 So. 3d at 1039. I find *Rowland*'s reasoning to be sound and would not overrule it. Because Carson's indictment failed to identify the victim of the underlying felony, his indictment was fatally defective and violated his federal and state constitutional rights to notice of the charge against him. Therefore, I would reverse Carson's conviction and dismiss the indictment.

*II. Ineffective Assistance of Counsel*

---

[10] The fact that Carson's indictment identifies the victim of the underlying crime by naming the homicide victim does not aid the State. The victim of the underlying crime in a capital murder case is not always the person who was killed. For example, in *Rowland*, Rowland was convicted of the capital murder of James Campbell while in the commission of the armed robbery of a different person, Pat Bolton. *Rowland*, 98 So. 3d at 1033. He also was convicted of the capital murder of Paul Hughes while in the commission of the armed robbery of O.B. Singleton. *Id.* It would be a logical fallacy to assume that identifying the homicide victim also identifies the victim of the underlying crime.

And Carson plainly raised the issue of notice in both his pro se supplemental brief and the supplemental brief filed by his counsel pursuant to an order of this Court. Carson argued that, because the identity of the victim of the underlying felony was omitted from the indictment, "the capital murder indictment in this case failed to allege an essential element necessary to put him on notice of the charges against him . . . ."

¶72. A defendant claiming ineffective assistance of counsel must show that counsel rendered deficient performance, and that the deficiency prejudiced the defense. *Pauley v. State*, 113 So. 3d 557, 562 (Miss. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A defendant is entitled to a cautionary jury instruction when an accomplice's testimony is uncorroborated. *Williams v. State*, 32 So. 3d 486, 491 (Miss. 2010). This Court has defined "accomplice" as: "a person who is implicated in the commission of a crime." *Brewer v. State*, 725 So. 2d 106, 124 (Miss. 1998). Without question, Clay was an accomplice to the crime under Mississippi law. Furthermore, Clay's testimony was uncorroborated and it provided the sole basis for the State's convictions against Carson. No witness other than Clay testified that he or she knew Carson was at the Ridgeland Ranch apartment complex on the night of the crimes. Clay provided the only proof adduced at trial, through his eyewitness testimony, that Carson shot Ortiz. Thus, if Carson's trial attorney had requested a cautionary instruction, the trial court would have been obligated to grant that request. Carson's attorney therefore failed to act reasonably in not requesting a cautionary instruction regarding Clay's testimony as an accomplice and, accordingly, was ineffective for the purpose of the first prong of the *Strickland* test. *Strickland*, 466 U.S. at 688.

¶73. Contrary to the majority's holding, Carson showed that counsel's insufficiency had a reasonable probability of affecting the outcome of the case. *Strickland*, 466 U.S. at 695. The entirety of the evidence connecting Carson to the crimes was provided by Clay, an accomplice who had recanted his statement to police before the trial. The State offered no

other witnesses who corroborated Clay's version of events or who had firsthand knowledge of the crime. The State offered no forensic evidence. The majority finds that Carson was not prejudiced because Bryant testified that Carson had admitted his participation in the robbery. But Bryant had no firsthand knowledge of the crime. In fact, Bryant testified that she had asked Carson directly whether he had shot Ortiz, and he had said "no." The only evidence that Carson shot Ortiz came from Clay. Bryant's testimony did not reduce the prejudice to Carson of counsel's having failed to request a cautionary instruction on Clay's accomplice testimony.

¶74.    In its finding that Carson failed to show prejudice, the majority also relies on the facts that Clay testified about his involvement in the crime, and that the jury could have inferred that Clay's plea deal gave him an incentive to lie. The majority's reasoning seems to be that these aspects of Clay's testimony rendered the instructional failure harmless, because a reasonable juror automatically would have viewed his testimony with skepticism. But the majority's speculative assessment of Clay's testimony does nothing to reduce its prejudice to Carson. Virtually all accomplice testimony includes a description of the witness's own criminal activity and "deal" with the State, and these aspects of accomplice testimony support rather than diminish the need for a cautionary instruction. An instruction from the judge informing the jury that "the uncorroborated testimony of an accomplice should be viewed with great caution and suspicion and that it must be reasonable and not improbable or self-contradictory or substantially impeached," *see **Hussey v. State***, 473 So. 2d 478, 480 (Miss. 1985), would have had a "reasonable probability" of affecting the outcome of the

37

case. *Strickland*, 466 U.S. at 695. The record on direct appeal supports an ineffective assistance of counsel claim that warrants reversal of Carson's conviction and sentence and remand of this case for a new trial. However, due to the insufficiency of Carson's indictment, I would hold that Carson's conviction must be reversed and the indictment dismissed.

*III. Jury Instruction D-6*

¶75.   I also disagree with the majority's finding that Carson was not entitled to jury instruction D-6. Without instruction D-6, the jury was not informed that "The presumption of innocence attends the defendant through the trial and prevails at the close of trial unless overcome by evidence that satisfies the jury of the defendant's guilty [sic] beyond a reasonable doubt." The language requested by Carson is a correct statement of the law. *Jones v. State*, 920 So. 2d 465, 471 (Miss. 2006) ("[B]ecause the law presumes every person charged with a criminal offense is innocent, the prosecution carries the burden of proving all elements of the charged offenses beyond a reasonable doubt. It follows that this presumption of innocence attends the defendant throughout the trial and prevails at its close unless and until this presumption is overcome by evidence which satisfies the jury of the defendant's guilt beyond a reasonable doubt."). Moreover, this concept is not fairly covered in the other instructions approved by the trial court. As such, the trial court erred by not giving the jury an instruction containing this language.

¶76.   This Court "will set aside a jury's verdict if the jury was *improperly instructed*, misled, confused, or ignores the weight of the evidence." *Jackson v. Daley*, 739 So. 2d 1031, 1039 (Miss. 1999) (citing *McKinzie v. Coon*, 656 So. 2d 134, 142 (Miss. 1995)) (emphasis

added). "A new trial may be granted in a number of circumstances, such as when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice." ***Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara***, 908 So. 2d 716, 726-27 (Miss. 2005) (quoting ***Shields v. Easterling***, 676 So. 2d 293, 298 (Miss. 1996)). In this case, evidence supporting the jury's verdict is scant. The entirety of the prosecution's case relied upon the sometimes-recanted testimony of Carson's alleged accomplice, Clay. Thus, it is impossible for this Court to know the impact that this instruction would have had on the jury's consideration.

*IV. Conclusion*

¶77. Because Carson's capital murder indictment did not identify the victim of the underlying felony of robbery, the indictment failed to provide Carson constitutionally sufficient notice of the crime charged and failed to provide him sufficient facts to enable a future double jeopardy plea. This Court squarely held in ***Rowland*** that a capital murder indictment that does not identify the victim of the underlying felony of robbery does not effectively charge capital murder. Therefore, Carson's conviction must be reversed and rendered. I also would find that Carson was prejudiced by his counsel's deficient failure to request an accomplice testimony instruction. Finally, I would hold that the trial court erred by denying Carson's proposed jury instruction that the presumption of innocence attends the defendant throughout the trial.

**KING, J., JOINS THIS OPINION.**