# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01597-COA

RICHARD MOISE                                                        APPELLANT

v.

STATE OF MISSISSIPPI                                                  APPELLEE

DATE OF JUDGMENT:             08/23/2013
TRIAL JUDGE:                  HON. JAMES LAMAR ROBERTS JR.
COURT FROM WHICH APPEALED:    LEE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       PAUL ALVIN CHINICHE
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: SCOTT STUART
DISTRICT ATTORNEY:            JOHN RICHARD YOUNG
NATURE OF THE CASE:           CRIMINAL - FELONY
TRIAL COURT DISPOSITION:      CONVICTED OF AGGRAVATED ASSAULT
                              AND SENTENCED TO TWENTY YEARS,
                              WITH SIXTEEN YEARS SUSPENDED AND
                              FOUR YEARS TO SERVE, AND WITH FIVE
                              YEARS OF POST-RELEASE SUPERVISION,
                              ALL IN THE CUSTODY OF THE
                              MISSISSIPPI DEPARTMENT OF
                              CORRECTIONS, AND TO PAY A $1,000
                              FINE, $10,000 IN RESTITUTION, AND $100
                              TO THE MISSISSIPPI CRIME VICTIMS'
                              COMPENSATION FUND
DISPOSITION:                  AFFIRMED - 03/24/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    In the early morning hours of January 1, 2013, it was alleged that Richard Moise

assaulted Kirk Boyd.  In August 2013, after a two-day trial, a jury in the Circuit Court of Lee

County found Moise guilty of aggravated assault.  He was sentenced to a term of twenty

years in the custody of the Mississippi Department of Corrections (MDOC), with four years to serve, sixteen suspended, and five years of post-release supervision. Aggrieved, Moise filed the instant appeal. Finding no error, we affirm.

## STATEMENT OF THE FACTS

¶2.     On December 31, 2012, Brent McMillin, Kerri McMillin, Sandy Moise, Kirk Boyd, and Charlie Knight celebrated New Year's Eve together at a Chili's restaurant in Tupelo, Mississippi. At approximately 12:30 a.m. on New Year's Day, the group went to Brent and Kerri McMillin's house in the town of Verona in Lee County, Mississippi. Around 1:00 a.m., Knight left the McMillins' house, and Brent and Kerri went to bed. Brent gave Boyd a pillow and blanket, and he went to sleep on the couch in the McMillins' living room. As everyone else was retiring for the night, Sandy was outside of the house calling and texting her husband, Moise, from whom she had recently separated. Moise was in Marion, Arkansas, and Sandy asked him to come pick her up. He agreed, and he arrived at the McMillins' home at approximately 2:00 or 2:30 in the morning.

¶3.     At trial, Brent testified that he woke up to a loud noise coming from the living room. Brent said he walked down the hall and found Boyd lying face down on an ottoman, with blood everywhere. When Brent looked out the door, he saw Sandy standing in the carport, facing the front yard. He then saw Moise come into the carport light from the darkness with his head down. When he looked up, his face was red, and he had an angry scowl on his face. Moise grabbed Sandy and took her to his car. Brent then said that he saw the brake lights of Moise's car as he drove down the driveway.

¶4.     Kerri and Sandy, who have been best friends for eight years, also testified at trial. They both testified that Moise was extremely jealous and controlling during his and Sandy's marriage. Sandy said that when she saw him at the McMillins' house, she could tell he was upset by the way he was "red-faced" and the fact that "he was trembling." Sandy testified that Moise grabbed her so roughly by her arm that he broke one of her fingernails and left a bruise. He walked her around the car, and they got in and left. She said that approximately thirty to forty-five minutes later, she received a text from Kerri saying that Boyd "had been beat up," and the text included a picture of a Boyd's "disfigured and bloody" face. Sandy testified that knowing Moise's temper, she believed he had done it.

¶5.     The State of Mississippi contends that Moise walked into the McMillins' house and assaulted Boyd while he was asleep on the sofa. Kerri testified that Moise had the motive to beat up Boyd. She stated that throughout his and Sandy's marriage, Moise had been very jealous and controlling. Kerri said that when Moise heard that Boyd had been with the group, Moise assumed Sandy and Boyd were together. Moise, on the other hand, contends that he neither assaulted Boyd nor entered the McMillins' home. To the contrary, Moise argues that it was possible that Sandy attacked Boyd in an act of self-defense.

¶6.     Following a two-day trial in the Circuit Court of Lee County, a jury found Moise guilty of aggravated assault. He was sentenced to serve a term of twenty years in the custody of the MDOC, with four years to serve and sixteen years suspended. Moise filed the instant appeal raising a number of issues. Finding no error, we affirm.

**DISCUSSION**

3

## I.   Whether the circuit court erred in refusing Moise's proposed jury instructions C-11 and C-12.

¶7.   First, Moise argues that the circuit court erred when it refused his proposed jury instructions labeled C-11 and C-12. "Our standard of review for determining whether error lies in the refusal of . . . a particular instruction[] requires that the instructions actually given be read as a whole." *Ellis v. State*, 956 So. 2d 1008, 1012 (¶6) (Miss. Ct. App. 2007). This Court will not find reversible error where the instructions, when read together as a whole, fairly declare the law of the case and do not create an injustice. *Id*. While defendants are entitled to have jury instructions given that present their theory of the case, courts may refuse instructions that are not accurate statements of the law, are fairly covered by other instructions, or are lacking foundation in the evidence. *Poole v. State*, 826 So. 2d 1222, 1230 (¶27) (Miss. 2002).

¶8.   Moise argues that the trial court erred in refusing two of his proffered jury instructions. The first instruction was labeled "C-11" and was a "two-theory instruction." Moise asserts that this is a circumstantial-evidence case, and that a two-theory instruction was warranted. "Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *McInnis v. State*, 61 So. 3d 872, 875 (¶11) (Miss. 2011) (quoting *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985)). Based on the facts of this case, we agree with the trial court that this is a case based on circumstantial evidence. Instruction C-11 read as follows:

> The Court instructs the Jury that if there be a fact or circumstance in this case susceptible of two interpretations, one favorable and the other unfavorable to [Moise], when the Jury has considered such fact or circumstance with all other

4

evidence, there is a reasonable doubt as to the correct interpretation, then you, the Jury, must resolve such doubt in favor of the accused, and place upon such fact or circumstance the interpretation most favorable to the accused.

¶9.     Moise argues that he "should have been entitled to a two-theory instruction, as well as the general circumstantial-evidence instruction."  In support of his argument both at trial and in his brief, Moise cites *Henderson v. State*, 453 So. 2d 708 (Miss. 1984), which held that a trial court had erred in refusing to give both the general circumstantial-evidence instruction and the "two-theory" instruction.  *Id.* at 710.  In 2009, the Mississippi Supreme Court addressed this issue of when failing to give a two-theory instruction would be considered reversible error and held that "[i]n a case based entirely on circumstantial evidence, if an instruction is allowed that the evidence must exclude every reasonable theory other than that of guilt, that is held to embody the essentials of the two-theory instruction[;] refusal of the latter is not reversible error."  *Goff v. State*, 14 So. 3d 625, 662-63 (¶162) (Miss. 2009) (quoting *Kitchens v. State*, 300 So. 2d 922, 926 (Miss. 1974)).  The supreme court went on to state specifically that "[t]o the extent that . . . *Henderson*[] and other cases suggest otherwise, they are hereby overruled."  *Id*.

¶10.    The trial court refused Instruction C-11 because the circuit judge believed it was covered elsewhere.  The trial court gave Instruction C-6, which read in pertinent part:

> The Court instructs the jury that if the State has relied solely on circumstantial evidence and not direct evidence to establish its theory of guilt of the defendant, then the evidence for the State must be so strong as to establish the guilt of the defendant not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.

Based on the holding in *Goff*, we find that it was not error for the trial court to refuse

Instruction C-11 since C-6 was given.

¶11. The second proposed jury instruction that Moise argues the trial court erred in refusing is Instruction C-12, which read as follows:

> The court instructs the jury that under the law you do not have the right to convict Richard Moise upon mere suspicion, regardless of how strong that suspicion might be. You may not convict Richard Moise just because there may be a preponderance of the evidence against him or just because there may be a reason to suspect that he is guilty. Suspicion, no matter how strong or convincing, never rises to the dignity of proof beyond a reasonable doubt. Before you find Richard Moise guilty, you must be convinced solely upon the evidence presented during this trial that Richard Moise is guilty beyond a reasonable doubt.

¶12. Moise argues that in refusing Instructions C-11 and C-12, the State received an unfair advantage from the trial court. He feels that by excluding those two jury instructions, the trial court "removed the possibility for the jury to consider that [Sandy] could have assaulted [Boyd] prior to her husband's arrival and without [Moise's] knowledge and then blame her action on [Moise]." The State, on the other hand, argues that it was covered elsewhere.

¶13. Instruction C-1 states in pertinent part that the jury's verdict "should be based on the evidence[] and the law and not upon speculation, guesswork[,] or conjecture." Next, Instruction C-2 included that the State had "the burden of proving the defendant guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with the defendant's innocence." Instruction C-7 instructs the jury as to the elements of the crime and says that if the State "failed to prove beyond a reasonable doubt any one or more of the . . . elements," the jury was to return a verdict of not guilty. Finally, Instruction C-14 "instructs the jury that a reasonable doubt may arise from the whole of the evidence, the

6

conflict of the evidence, a lack of evidence, or the insufficiency of the evidence, but however it arises, if it arises, it is your sworn duty to find the defendant not guilty."

¶14. Based on the foregoing, we agree with the trial judge that the information from the proposed Instruction C-12 was covered by other instructions, and it is not error for a trial court to "refuse . . . jury instructions that . . . are covered fairly elsewhere in the instructions." *Dora v. State*, 20 So. 3d 46, 50 (¶16) (Miss. Ct. App. 2009). Accordingly, we find that it was not error for the trial court to refuse proposed Instructions C-11 and C-12.

**II.     Whether the circuit court erred when it denied Moise's motions for a directed verdict and a JNOV.**

¶15. Moise argues that "there was no eye[]witness to this crime and no confession." Therefore, he believes that the verdict in the case was contrary to the overwhelming weight of the evidence, and he is seeking a reversal of his conviction.

¶16. "In a criminal proceeding, motions for a directed verdict and a [JNOV] challenge the legal sufficiency of the evidence supporting the guilty verdict." *Williams v. State*, 122 So. 3d 105, 108 (¶15) (Miss. Ct. App. 2013) (citation omitted) (citing *Croft v. State*, 992 So. 2d 1151, 1157 (¶24) (Miss. 2008)). This Court reviews the denial of motions for a directed verdict and a JNOV de novo. *Hill v. State*, 17 So. 3d 1092, 1098 (¶20) (Miss. Ct. App. 2009). "[R]eversal is warranted only if 'after viewing all the evidence in the light most favorable to the verdict, one or more of the elements of the charged offense is such that reasonable and fair-minded jurors could only find the accused not guilty." *Williams*, 122 So. 3d at 108 (¶15).

¶17. It is also important to note that "all the proof need not be direct[,] and the jury may

draw any reasonable inferences from all the evidence in the case." *Anthony v. State*, 23 So. 3d 611, 623 (¶53) (Miss. Ct. App. 2009) (citations omitted). In a criminal case, circumstantial evidence is entitled to receive as much weight as any other evidence, and convictions may be sustained solely on circumstantial evidence. *Id*. However, Mississippi law requires that "the circumstantial evidence be sufficient to prove the defendant's guilt beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence. *Walton v. State*, 642 So. 2d 930, 932 (Miss. 1994). It is province of the jury to resolve any conflicts in the circumstantial evidence presented and to weigh the credibility of witnesses when considering conflicting testimony. *Anthony*, 23 So. 3d at 623 (¶53).

¶18. The jury was instructed by the circuit judge that in order to find Moise guilty of the crime of aggravated assault, they must have found the following: (1) on January 1, 2013, in Lee County, Mississippi; (2) Moise did willfully, unlawfully, and feloniously cause or attempt to cause serious bodily injury; (3) to Boyd; (4) by hitting Boyd with his fist or an unknown object. Evaluating the evidence presented in the light most favorable to the State, it is clear that there was sufficient evidence to support the jury's findings. At the time of the assault, the only people in the house were Brent and Kerri McMillin and Boyd. Moise had called Sandy and told her to meet him, so she was standing outside waiting. Sandy testified that when she walked by Boyd about five minutes before seeing Moise, Boyd was asleep on the couch and was not yet injured. Brent was awoken by a loud noise and within thirty seconds, he was at the front of the house and saw Boyd covered in blood. Brent observed Kerri standing facing the yard, and then he saw Moise appear red-faced and trembling.

Using the standard of review set forth by the supreme court, we find that viewing the evidence in the light most favorable to the State, a reasonable juror could have found Moise guilty of aggravated assault. Accordingly, we affirm the trial court's decision to deny Moise's motions for a directed verdict and a JNOV.

### III. Whether the circuit court erred when it denied Moise's motion for a mistrial.

¶19. Moise argues that the trial court also erred in denying his motion for a mistrial following the State's closing argument. He believes that the assistant district attorney's arguments were "inflammatory, tainted the jury[,] and highly prejudiced [him] in the most serious way." Specifically, the State said the following to the jury:

> You know, I've been doing this so long. I've been doing this 25 years. And I used to be a defense attorney. I was a defense attorney for most of the time that I practiced law. And I know every trick in the book. I mean I know every one of them. You know, you kind of laugh as an attorney when you hear the tricks being done. And one of the things you see about a defense attorney and about the practice of law is that when somebody doesn't have a defense, they just throw out anything.

Moise claims that his attorney objected, and his objection was sustained. However, Moise complains that a curative instruction was not given by the trial court, which allowed the error to stand, and his motion for a mistrial was denied. The State, on the other hand, argues that Moise did not ask for a curative instruction to be given, nor did he move contemporaneously for a mistrial. Instead, Moise waited until after the jury retired to begin deliberations to move for the mistrial.

¶20. "The standard used in reviewing closing arguments is 'whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice

against the accused resulting in a decision influenced by prejudice.'" *Lewis v. State*, 905 So. 2d 729, 735 (¶17) (Miss. Ct. App. 2004) (quoting *Rushing v. State*, 711 So. 2d 450, 455 (¶15) (Miss. 1998)). The Mississippi Supreme Court has stated that "attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Dampier v. State*, 973 So. 2d 221, 235 (¶39) (Miss. 2008). When evaluating the allegedly improper comments, the appellate court must consider them in the context of the case, bearing in mind that "the trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect." *Sanders v. State*, 939 So. 2d 842, 846 (¶9) (Miss. Ct. App. 2006).

¶21. The State relies on *Marshall vs. State*, 22 So. 3d 1194 (Miss. Ct. App. 2009), to support its position that the prosecutor's remarks were not improper. In *Marshall*, the assistant district attorney made the following statement during his closing argument: "There ain't no evidence. Ain't no evidence he's not guilty." *Id*. at 1196 (¶10). This Court found that "this statement did not constitute plain error. It did not seriously affect the fairness, integrity or public reputation of the judicial proceedings." *Id*. at (¶11) (citation omitted). We based this finding on caselaw from the supreme court, which held:

> [A]lthough a direct reference to the defendant's failure to testify is strictly prohibited, all other statements must necessarily be looked at on a case-by-case basis. There is a difference, however, between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense. Moreover, the State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify by innuendo and insinuation.

*Id*. at 1197 (¶12) (quoting *Strahan v. State*, 729 So. 2d 800, 807 (¶27) (Miss. 1998)).

¶22.    Based on the foregoing, we find that the assistant district attorney's remarks during closing arguments were directed at his perceived lack of a defense by Moise.  As such, we find that the argument did not constitute error and did not warrant a mistrial.  This issue is without merit.

  **IV. Whether there was an accumulation of errors that was sufficient to vacate the judgment of guilt.**

¶23.    In the event that this Court does not find any single error sufficient to warrant the reversal of his conviction, Moise asks that this Court reverse his sentence due to cumulative error.  Because this Court did not find any errors, this issue is also without merit.

¶24.    **THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS, WITH SIXTEEN YEARS SUSPENDED AND FOUR YEARS TO SERVE, AND WITH FIVE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $1,000 FINE, $10,000 IN RESTITUTION, AND $100 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

  **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.  BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**