CARLTON, J,
DISSENTING:
,¶ 40,1 respectfully dissent from the majority’s opinion. Upon review, I. .find the circuit court abused its discretion by refusing Thompson’s proposed jury instruction D-3.1 also find the circuit court abused its discretion by failing to provide supplemental instruction when the jury, during its deliberations, requested additional instruction as to the lack or insufficiency of proof. As a result, I would reverse the circuit court’s judgment and remand .the case for a new trial. . ,
FACTS
¶ 41. On the evening of May 22, 2010, a large group of people gathered in Stark-ville, -Mississippi, outside Club 124 and across the street in a Texaco parking lot. King testified that it was graduation night and that the crowd consisted of people ranging from ages fourteen to thirty. King stated that she was talking to her cousin in an area' next to the Texaco parking lot when she noticed a group of guys walking toward the Texaco parking lot. King testified that a guy with dreadlocks wearing a white shirt was facing the approaching group. As the guy in the white shirt walked into the street, King stated that a Chevrolet Avalanche pulled up next to him. According to King, the driver spoke to the guy in the white shirt, who looked at the driver, looked, in the backseat of the truck, and then reached into the backseat of the truck, King testified that, after the guy in the white shirt reached into, the truck, “he came out shooting ,.. from left to right” and fired more than four or .five shots within a few seconds.
¶ 42. After firing the shots, King testified that the shooter jumped into the truck through the open back window, and the truck sped-away. King testified that she then noticed a body in the street, and she called 911 as she approached the body. Upon reaching the victim, King discovered he was Randle, a longtime friend of King’s brother. King testified that someone began performing CPR on Randle until law enforcement arrived. Authorities later determined that Randle sustained a shot to his chest and died from his injuries.
¶43. Harris testified that he was also present when the shooting occurred. Harris testified that he was- standing.by the Texaco, talking to his brother,., Smith, just prior to the shooting. Harris stated that his brother and Thompson had a disagreement. and that his brother punched Thompson, Harris further. testified that Thompson then pulled out an “all-black gun” and “just started shooting.” According to Harris, Thompson was the only person he saw with a gun on the night of the shooting. Harris stated that one of the bullets struck him in his lower back and exited his right side. He further testified that he spent three weeks in the hospital while he recovered from his injuries.
¶44. Ross also testified that she was present when the shooting occurred. Ross testified that she was talking to her brother in the Texaco parking lot when she saw Smith walk, up and punch Thompson. Ross stated that.Thompson stumbled, and then Ross heard gunshots. Ross further stated that she saw a gun in Thompson’s hand prior to the shots, but she explained that she never actually saw Thompson point the gun and pull the trigger. Ross testified that a bullet struck her in her pelvic region and that she was later taken ,to the hospital to receive treatment for her injury.
■ ¶45. Like the State’s other witnesses, Outlaw testified that he was present when *1057 the shooting occurred. Outlaw stated that he saw Smith punch Thompson, and then he heard gunshots. Although it was too dark for him to actually see a gun, Outlaw testified that he knew Thompson had pulled out a gun because he saw the sparks when the gun-was fired. Outlaw testified that he then felt a bullet hit him and that he later received treatment for injuries to his elbow and his liver.
¶ 46. In response to King’s 911 call, officers from the Starkville Police Department arrived and began to secure the' crime scene. Detective Scotty Carrithers testified that he collected and bagged six Smith & Wesson .40-caliber shell casings from the scene. Officer Andy Round testified that he and Officer Josh Buckner went to the hospital to interview the victims. Officer Round testified that he spoke to Harris and Outlaw, who both identified Thompson as the shooter.
¶ 47. Although Thompson did not testify during the defense’s case-in-chief, the defense called five other witnesses. After the defense rested, the State moved to introduce rebuttal evidence. The State sought to admit the testimony of Stamps, who was a detective with the Starkville Police. Department at the time of the May 22, 2010 shooting. The State also sought to introduce into evidence the videotape of an interview Detective Stamps conducted with Thompson. The State argued that the rebuttal evidence was proper because the evidence contradicted certain testimony provided by the defense’s witnesses. While the defense initially objected to all of the State’s rebuttal evidence, it later withdrew its objection to the admission of the videotaped interview. However, the record reflects that the defense did not withdraw its •objection to Detective Stamps’s testimony. After hearing the parties’ arguments, the circuit court allowed the State’s rebuttal evidence. The circuit court then gave the defense the opportunity to respond through surrebuttal. Although the defense initially declined to present any surrebut-tal evidence,-it later changed its mind and’ ■offered a surrebuttal witness.
¶ 48. During the State’s rebuttal, Detective Stamps testified that he conducted a videotaped interview with Thompson and that Thompson admitted to firing a .40-caliber weapon five to seven times. Detective Stamps stated that, during the interview, Thompson said he had fired the gun, dropped the weapon, ancl then gotten in a vehicle to leave the scene. On cross-examination, Detective Stamps testified that law enforcement never recovered the weapon involved in the shooting during the course of their investigation.
¶ 49. The jury found Thompson guilty of one count of murder and three separate counts of aggravated assault. For Count I, murder, the circuit court sentenced Thompson to thirty years in the custody of the MDOC. For each count of aggravated assault, the circuit court sentenced Thompson to five years in MDOC’s custody, with the sentence in Count II to run consecutively to the sentence in Count I; the sentence in Count III to run concurrently with the sentence in Count I; and the sentence in Count IV to run consecutively to the sentences in Counts I and II. Thompson subsequently filed an unsuccessful motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Aggrieved by his convictions and sentences, Thompson appeals.
DISCUSSION
¶ 60.1 find dispositive Thompson’s argument that the circuit court abused its discretion by refusing all the defense’s proposed jury instructions. I therefore limit my dissent to the merits of this assignment of error.
*1058 ¶ 51. In his second assignment of error on appeal, Thompson contends that the circuit court’s refusal of all fifteen of the defense’s proposed jury instructions gave the State an unfair advantage, confused the jury as to its responsibility, and interfered with his right to present his theory of the case. However, Thompson only provides supporting argument and authority for his assertions that the circuit court erred in refusing the following three defense instructions: D-i, D-2, and D-3. As our caselaw clearly establishes, “if an appellant fails to support [his] allegation of error with argument or authority, this Court 'need not consider the issue.” Miller v. State, 144 So.3d 199, 203 (¶ 15) (Miss. Ct. App. 2014) (citation omitted). As a result, I find this issue is procedurally barred on appeal except with regard to the alleged error involved in the denial of proposed jury instructions D-l, D-2, and D-3. See id. In addition, I acknowledge that, during oral argument before this Court, the defense conceded that proposed jury instruction D-l was fairly covered elsewhere in. the jury instructions. I therefore further limit my review of this issue. In so doing, I find the circuit court’s refusal to grant jury instruction D-3 is dispositive of this appeal, particularly since the jury here expressed confusion to the circuit court during its deliberations, but the circuit court provided no supplemental instruction that was relevant to the jury’s, inquiry or that cured the omission existing in the previously given instructions.
¶ 52. In addressing Thompson’s arguments that the circuit court erred by refusing certain proposed defense jury instructions, I acknowledge that we review the circuit court’s grant or refusal of proposed jury instructions for abuse of discretion. See Quinn v. State, 191 So.3d 1227, 1231-32 (¶ 18) (Miss. 2016). While the “defendant is entitled to have jury instructions given which present his theory of the case[,] ... this entitlement is limited in that the court may refuse an instruction [that] incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Id. at 1232 (¶ 18) (citation omitted). We review the jury instructions as a whole, and where they “fairly announce the law of the case and create no injustice,” we will find no reversible error. Id. (citation omitted).
A. Proposed Jury Instruction D-2.
¶ 53. As stated, I find the circuit court’s denial of jury instruction D-3 to be dispos-itive of this appeal. In so doing, I acknowledge that I find no abuse of discretion in the circuit court’s denial of instruction D-2, and I distinguish the language of proposed instruction D-2 from that of proposed instruction D-3. The language of proposed instruction D-2 sought to explain what constitutes reasonable doubt. Mississippi precedent clearly precludes jury instructions that attempt to define reasonable doubt. See Fulgham v. State, 46 So.3d 315, 332 (¶ 46) (Miss. 2010). By contrast, proposed instruction D-3 did not seek to define or explain reasonable doubt. Instead, proposed instruction D-3 explained that reasonable doubt may arise from the evidence, the lack of the evidence, a conflict in the evidence, or the insufficiency of the evidence. Moreover, Mississippi precedent establishes that the language of proposed instruction D-3 constitutes a proper statement of the law, and Mississippi precedent affirms the language of instruction D-3 in cases where warranted by the evidence and not otherwise covered by other instructions.[9]
*1059 ¶ 54. As the’ record reflects, proposed jury instruction D-2 stated:
The [c]ourt instructs the jury that you are hound, in deliberating on this case, to give the [Defendant the benefit - of any reasonable doubt of the [D]efen-dant’s guilt that arises out of the evidence or want of evidence in this case. There is always a reasonable doubt of the [Djefendant’s guilt when -.the evidence simply makes it probable that the [Defendant is guilty. Mere probability of guilt will never warrant you to convict the [Defendant. It is only when, after examining the evidence on the . whole, you are able to say on your oath, beyond a reasonable doubt, that the [Defendant is guilty that the law will permit you to find him guilty. You might be able to say that you believe him to be guilty and yet, if you are not able to say on your oaths, beyond a reasonable. doubt, that he is guilty[,] it is your sworn duty to And the [Defendant “Not Guilty[.”]
¶55. Pursuant to the Mississippi Supreme Court’s ruling in Fulgham, I And that jury instruction D-2 was improper because it attempted to . define reasonable doubt. The Fulgham court stated that reasonable doubt defines itself and that, a definition of the term is an improper instruction for the jury. Id. at 332 (¶46). Because I find that Fulgham controls with regard to this issue, I find no abuse of discretion in the circuit court’s refusal to grant proposed jury instruction D-2. However, because I find error in the circuit court’s refusal to grant proposed jury instruction D-3, I focus my discussion on that assignment of error.
B. Proposed Jury Instruction D-3
¶ 56. As discussed, in contrast to proposed instruction D-2, Thompson’s proposed jury instruction D-3 provided no’ definition or explanation of what constitutes reasonable doubt. Instead, proposed instruction D-3 instructed the jury on a correct statement of caselaw as to where reasonable doubt can arise—from the evidence, the lack of the evidence, the insufficiency of the evidence, or a conflict in the evidence.[10] Moreover, proposed instruction' D-3 contained no impermissible comment on the weight or sufficiency of any particular evidence. Proposed instruction D-3 stated the following:
The [cjourt instructs the jury that a reasonable doubt may arise from the whole of the evidence, the conflict of the evidence, the lack of the evidence, or the insufficiency of the evidence; but however it arises, if it arises, it is your sworn duty to' find' the [Defendant “Not Guilty[.”]
¶ 57. At trial, the State objected to the defense’s request for jury instruction D-3 on the ground that the instruction was argumentative. During oral argument before this Court, the State claimed the instruction was fairly covered elsewhere. However, the State failed to identify in the record or on appeal where instruction D-3 *1060 was covered elsewhere in another jury instruction. To support its position - that instruction D-3 was argumentative, the' State cited Hunter v. State, 489 So.2d 1086 (Miss. 1986). A review of 'Hunter shows, though,, that the language of the disputed jury instruction proposed in that case differed from the language contained in instruction D-3 that Thompson proposed in this case. Additionally, a review of the record reflects that the statement of law contained in proposed instruction D-3 was indeed not covered elsewhere and that a need for the omitted instruction was displayed in the record by the jury’s question during its deliberations asking the circuit court for further guidance as to what to do if some jurors found insufficient evidence. The. question raised by the jury during its deliberations shows the omission in the instructions and the need for further related instruction.
¶ 58. In Hunter, the defendant proposed the following jury instruction:
The [cjpurt instructs the jury that a reasonable doubt of guilt may arise from the evidence, from the lack of evidence, from an insufficiency of evidence, or from a conflict in the evidence; but however it arises, if it does arise in your mind, then it both justifies and demands, under your oaths, that you return a verdict of “Not Guilty.”
Id. at 1088-89 (emphasis added to denote the additional language not contained in Thompson’s proposed instruction D-3). The language contained in Hunter’s proposed instruction differed from that in the instant case. Also, the Hunter court found the proposed instruction in that case to be argumentative and abstract. Id. at 1089. The Hunter court further stated that the jury instructions as a whole properly instructed the jury on reasonable doubt and that the trial court granted the defendant’s proposed instruction in a different form. Id.
¶59. Although the proposed jury instruction in Hunter contained some language similar to that used in Thompson’s proposed jury instruction, the proposed instruction in Hunter also contained additional argumentative language not contained in Thompson’s proposed jury instruction D-3. See id. at 1088-89. As a result of this additional argumentative language, the proposed instruction in Hunter is distinguishable from Thompson’s instruction D-3, and Hunter therefore fails to control the issue before us in the present case. ’In addition, whereas the trial court in Hunter granted the defendant’s proposed instruction in a different form, the circuit court in this case provided no alternative instruction upon'its' denial of Thompson’s proposed jury instruction D-3 or subsequently during the proceedings. See id, at 1089, The defense argued below .that it was critical for the jury to be properly and adequately instructed as to its duty upon finding reasonable doubt, and failure to so instruct was error.
¶60. In this ease, during deliberations, the jury asked the circuit court for instruction on lack or insufficiency of evidence. However, the record reflects that the circuit court failed to determine the need for additional or supplemental instruction and granted no alternative instruction to D-3.[11] In determining this appeal, I review the facts in the record relevant to the inquiry the circuit court received from the jury during its deliberations and the circuit court’s response to the jury’s inquiry. I then will turn to a review of applicable caselaw.
*1061 ¶61. As the record reflects, during its deliberations, the jury sent the following question to the circuit court: “What if we have a number'of jurors [who] feel like there is not enough evidence to reach a verdict?” Upon reading the jury’s question, the circuit-court judge stated that he was unsure whether the jurors meant they were deadlocked or whether. they were asking for additional instructions. The circuit-court judge then stated, “If they’re asking for additional instructions, of course, I cannot do that. All I can do is give them an instruction that says you’re adequately instructed already.” In addition, the following exchange took place:
The Court: Well, I can’t give them additional instructions on—
Thompson’s Attorney: Reasonable doubt?
The Court: No, I cannot do that . .
¶ 62. After further discussing the matter with the attorneys, the circuit-court judge sent back jury instructions C-20 and C-30, which had previously been given to the jury. The record reflects that neither jury instruction C-20 nor C-30 contained the language of Thompson’s proposed jury instruction D-3. Jury instruction C-20 stated:
I know that it is possible for honest men and women to have honest different opinions about the facts of a case. But, if it is possible to reconcile your differ-' enees of opinion and. decide this case, then you should do so.
Accordingly, I remind you that the [cjourt originally instructed you that the verdict of-the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with, your fellow jurors.- In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you are convinced it is-erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.
¶ 63. Jury instruction C-30 further provided:
The [cjourt instructs the jury that the [c]ourt has adequately ihstrueted the jury concerning the law in this case. You are not to single out any single instruction and ignore the others. The [c]ourt directs the jtiry to read all the instructions already given to thé jury by the [c]ourt.
¶ 64. The jury subsequently requested, a TV and a DVD player to review Thompson’s taped r interview with Detective Stamps. At that point, one of Thompson’s attorneys reasserted the defense’s objection to the circuit court’s refusal of proposed jury instruction D-3. Thompson’s attorney also stated:
. I would continue in my prior objection that showing that video would amount to testimony again..
Furthermore, Your Honor, with regard to the earlier note where the jury said that they would like to know if jurors felt that they did not have enough evidence in order to make a determination, I think that the [c]ourt should have properly instructed the jury to our instruction that we provided, the instruction which states that, “The [c]ourt instructs the jury that a reasonable cloubt may arise from the whole of the evidence, the conflict of the evidence, the lack of the evidence, or the insufficiency *1062 of the evidence, but however it arises, if it arises, it is your sworn duty to find the defendant not guilty.”
We feel that was a proper instruction, and we feel that our objection should be reasserted that that was not provided, and we feel that it should be provided.
¶ 65. On appeal, Thompson reasserts the argument that jury instruction D-3' was not covered elsewhere in the jury instructions, and as a result, the jury was not “properly, fully, and fairly instructed.” According to Thompson, the refusal of instruction D-3 prevented the jury from properly considering whether there was an insufficiency or lack of evidence to support the guilty verdict. Thompson also asserts that, due to the refusal of instruction D-3, the jury was never instructed that reasonable .doubt could arise from the whole of the evidence, the lack of evidence, or the insufficiency of the evidence. Thompson further argues that, “[b]y failing to provide the jury with a proper instruction concerning the potential of a ‘lack or want of evidence[,’] the [cjourt left ... members of the jury believing it was their sworn duty to find [Thompson] guilty.” A review of the record indeed reflects that the jury instruction proposed in instruction D-3 was not covered elsewhere. This omission was evident during the jury’s deliberations when it asked for more instruction on an insufficiency or lack of evidence. ■
¶ 66. Our supreme court has established that, where a defendant proffers a jury instruction that correctly states the law, is not fairly covered elsewhere, and is supported by the evidence, the trial court should grant the requested instruction. See Banyard v. State, 47 So.3d 676, 681 (¶¶ 11-12) (Miss. 2010). A review of relevant case-law and the record before us reflects that proposed jury instruction D-3 indeed provided a correct statement of the law and was not covered elsewhere in another jury instruction. Mississippi precedent reflects numerous other cases in which the trial court granted a jury instruction almost identical to or substantially similar to Thompson’s proposed jury instruction D-3. See Glidden, 74 So.3d at 346 (¶ 13); Rigby, 826 So.2d at 706 (¶ 38); Moise, 159 So.3d at 1209 (¶ 13); Vaden, 965 So.2d at 1074 (¶ 5). Furthermore, a review of the language of proposed jury instruction D-3, as well as a review of Mississippi jurisprudence, reflects that proposed instruction D-3 .did not improperly comment on the weight of the evidence, improperly single out any evidence to the jury, or improperly define reasonable doubt.
¶ 67. As stated, a review of the record and applicable caselaw reflects that Thompson’s jury instruction D-3 provided a correct statement of the law, was supported by the evidence, and was not fairly covered elsewhere in the jury instructions. See id. Moreover, the record reflects that the jury’s inquiry to the circuit court during its deliberations displayed a need for supplemental instruction due to an omission in the instructions given—specifically, an omission as to the statement of caselaw encompassed in instruction D-3, which provided that “a reasonable doubt may arise from the whole of the evidence, the conflict of the evidence, the lack of the evidence, or the insufficiency of the evidence .... ”
¶-68. As previously discussed, the- jury stopped its deliberations and sent the circuit court a note asking, “What if we have a number of jurors [who] feel like there is not enough evidence to reach a verdict?” In response to the jury’s note; the circuit court failed to ascertain whether supplemental instruction was needed and, if so, to provide the needed supplemental instruction. The inquiry the circuit court received from the jury specifically related to the issues of whether reasonable doubt *1063 could arise from a lack or insufficiency of the evidence and the jury’s duty if it made such a determination. Thus, the jury’s question pertained to the instruction contained in proposed instruction D-3, and the inquiry displayed a need for supplemental instruction due to an omission in the previously granted jury instructions. Our precedent reflects that supplemental jury instruction is allowed when necessary to cover an omission in previously granted instructions. Hughes v. State, 983 So.2d 270, 280 (¶ 42) (Miss. 2008).[12]
¶ 69. Rule 3.10 of the Uniform Rules of Circuit and County Court provides:
If the jury, after [it] retirefs] for deliberation, desires to be informed of any point of law, the court shall instruct the jury to reduce its question to writing[,] and the' court[,] in its discretion, after affording the parties an opportunity to state their objections or assent, may grant additional written instructions in response to the jury’s requést.
¶ 70. In- Hughes, the supreme court provided, the following guidance to trial courts facing such situations:
Once the trial court receives a question from the jury, the judge’s first responsibility is to determine whether any further instruction is necessary. No further instruction should be given unless necessary for clarity or to cover an omission.- The trial judge must then be certain that he understands precisely what is meant by the jury’s inquiry.
Hughes, 983 So.2d at 280 (¶ 42) (internal citations and quotation marks omitted). See also Wright v. State, 512 So.2d 679, 681 (Miss. 1987) (recognizing that nothing in the law requires a trial judge to become ■mute once the jury retires and stating that, especially where the jury appears to be “at a loss as to how it should proceed, there is no rational reason why we should discourage our trial judges from providing supplementary guidance”).
¶ 71. In the present case, upon receiving the jury’s inquiry during its deliberations, the circuit court failed to determine whether supplemental instruction was necessary as required by jurisprudence. See Hughes, 983 So.2d at 280 (¶¶ 41-42). The circuit court erroneously stated on the record that it could not give additional instruction to the jury. The circuit court further stated that all it could do was tell the jurors they had already been adequately' instructed. Despite the .circuit court’s statements, however, our caselaw makes clear that a trial court possesses the authority to provide supplemental instruction when necessary to clarify or to cover an omission. Id. at (¶ 42).
¶ 72. As previously stated, the record reflects that Thompson’s proposed jury instruction D-3 directly related to the question the jury asked of the circuit court during, its deliberations. The record further reflects that proposed instruction D-3 was not covered in the other instructions given to the jury and that the jury’s question reflected this omission in the previously given jury instructions. See id. The circuit court therefore abused its discretion by failing to grant either Thompson’s proposed instruction D-3 or an alternative instruction or to provide necessary related supplemental instruction to eure the omission in the previously given instructions upon receipt of the jury’s inquiry during its deliberations.[13] As discussed, upon re- *1064 eeipt of a question from the jury, a trial court possesses the duty ,to; determine whether further instruction is necessary to clarify or correct an omission. Id, at 280 (¶ 42). .
¶ 73. Our caselaw clearly establishes that, Thompson’s proposed instruction D-3 constituted a correct statement of the law, and the record in this case reflects that the instruction was supported by the evidence and was not fairly covered elsewhere in the jury instructions. See Glidden, 74 So.3d at 346 (¶ 13); Rigby, 826 So.2d at 706 (¶ 38); Moise, 159 So.3d at 1209 (¶ 13); Vaden, 965 So.2d at 1074 (¶ 5). As acknowledged, the supreme court has held that “[a] defendant is entitled to have instructions on his theory of the case presented, even though the evidence that supports [his theory] is weak, inconsistent, or of doubtful credibility.” Banyard, 47 So.3d at 681 (¶ 12) (citation omitted). The supreme court has also acknowledged “that the rule which requires that all instructions should be read together does not cure an erroneous instruction in conflict with a proper instruction ....” Id. at 684 (¶ 23) (citation and internal quotation marks omitted). Similarly, in the present case, the rule does not cure the omission in the instructions given to the jury pertaining to the caselaw set forth in Thompson’s proposed instruction D-3 on his defense theory.[14]
¶74. In the present case, the circuit court’s denial of proposed instruction D-3 constituted an abuse of discretion because instruction D-3 was a correct statement of -the law, was not fairly covered elsewhere, and was . supported by the evidence. See Barnes v. State, 158 So.3d 1127, 1136 (¶ 33) (Miss. 2015); Banyard, 47 So.3d at 681 (¶ 11). I therefore would reverse the circuit court’s judgment and remand the case for a new trial.[15] As a result, I dissent from the majority’s opinion,
IRVING, P.J., AND BARNES, J., JOIN THIS OPINION.

. The majority relies on Roby v. State, 183 So.3d 857 (Miss. 2016). However, in Roby, the defense raised no objection to the trial court’s denial of the proposed instruction, and *1059 upon review, the supreme court found that the instruction was extensively covered by other instructions. Roby, 183 So.3d at 874 (¶ 69). Such is not the case before us since Thompson’s proposed instruction D-3 was ’ not covered elsewhere. Additionally, the language set forth in instruction D-3 has long been held to constitute a correct statement of law. See Glidden v. State, 74 So.3d 342, 346 (¶ 13) (Miss. 2011); Rigby v. State, 826 So.2d 694, 706 (¶ 38) (Miss. 2002); Moise v. State, 159 So.3d 1205, 1209 (¶ 13) (Miss. Ct. App. 2015); Vaden v. State, 965 So.2d 1072, 1074 (¶ 5) (Miss. Ct. App. 2007).

. As noted, precedent holds that the language set forth in proposed instruction D-3 constitutes a correct statement of law. See Glidden, 74 So.3d at 346 (¶ 13); Rigby, 826 So.2d at 706 (¶ 38); Moise, 159 So.3d at 1209 (¶ 13); Vaden, 965 So.2d at 1074 (¶ 5).

. See Hughes v. State, 983 So.2d 270, 280 (¶ 42) (Miss. 2008) ("Once the trial court receives a question from the jury, the judge’s first responsibility is to determine whether any further instruction is necessary.” (citation omitted)).

. “A trial court has authority to give supplemental instructions to a jury[,] and the decision to do so is reviewed under an abuse-of-discretíon standard.” Hughes, 983 So. 2d at (¶ 41) (citation omitted).

. See Shaw v. State, 540 So.2d 26, 30 (Miss. 1989) (explaining that, while sensitive to the danger that a supplemental instruction might cause a jury to single out and focus on a particular point, proper supplemental in *1064 structions often turn on the manner in which given, and the jury should consider any supplemental instructions along with the other instructions given by the court).

. In homicide cases, the supreme court has provided that "the trial court should instruct the jury about a defendant’s'' theories of defense, justification; or excuse that are supported by the-'evidence, no matter'how meager or unlikely, and the trial court’s failure to do so is error requiring reversal of. a judgment of conviction.” Manuel v. State, 667 So.2d 590, 593 (Miss. 1995). Where the instructions are in an improper format but are the only instructions presenting the defendant’s theory of defense, the trial court possesses a duty to see that the instructions are placed in the proper form for the jury. Id,

. See Barnes, 158 So.3d at 1137 (¶ 36).